# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| TERRIE HOLSCHER,<br><br>            Plaintiff,<br><br>vs.<br><br>MATTHEW J. DEURMEIER, FBI AGENT, IN HIS INDIVIDUAL CAPACITY JOINTLY AND SEVERALLY, et al.,<br><br>            Defendants. | 20-CV-67-BU-BMM<br><br>Order |

## INTRODUCTION

Terrie Holscher ("Plaintiff") brought this action against Robert Harris, Kenneth Hess, Sean Magurire, FBI Special Agents Matthew Deurmeier and Jonathan Tjernagel, Director of the FBI Christopher Wray, and then, U.S. Attorney General William Barr (collectively, "Defendants") based on claims arising from a storage unit inspection by the FBI and authorizing search warrant. (Doc. 1; Doc. 53 at 7). Plaintiff filed an Amended Complaint on May 14, 2021. (Doc. 70). Plaintiff's various claims center on an allegedly invalid search warrant. (Doc. 70 at 4).

Plaintiff first filed a Motion for Summary Judgement on April 22, 2021, arguing in part that "the FBI does not exist." (Doc. 59 at 4). Plaintiff again filed a

Motion for Summary Judgement on May 26, 2021, centered on the issue of the validity of the search warrant. (Doc. 75). Plaintiff alleges that the incorrect search location address and the fact that Special Agent Deurmeier forged the signature of Magistrate Judge Kathleen DeSoto rendered the warrant invalid. (Doc. 70 at 8; Doc. 75).

Defendants have filed several Motions to Dismiss. (Docs.14, 16, 34, 36, 51, 78). In their most recent motion, Defendants argued that the Government's search warrant was reasonable and lawful because the warrant search location address was correct, law enforcement searched the appropriate storage unit, and Judge DeSoto provided a valid remote signature. (Doc. 79 at 2).

## BACKGROUND

Defendant Hess leased Plaintiff and her partner Gregory Shideler a storage unit under the name MRPR LLC beginning in 2018. (Doc. 53 at 3). Hess decided to conduct a routine inspection of the storage unit following an alleged confrontation with Plaintiff and Shideler. (Doc. 53 at 3). Hess provided Plaintiff and Shidler 24-hour notice of that inspection as required under the rental agreement. (Doc. 53 at 3). Hess requested the presence of Gallatin County Sherriff officers at the inspection. (Doc. 53 at 5).

Hess and officers entered the storage unit on May 22, 2020. (Doc. 53 at 5). Hess heard a beeping noise and noticed two wires stretched across the top and

bottom of the doorway as he entered the storage unit. (Doc. 53 at 5). One of the people present tripped the wire, causing the sound of a gunshot or explosion near the doorway. (Doc. 53 at 5). An officer advised everyone present not to proceed with the inspection. (Doc. 53. at 6).

Hess provided a video his grandson had taken of the inspection and his eyewitness account to FBI Special Agent Deurmeier a few days after the inspection. (Doc. 53 at 7). Special Agent Deurmeier contacted local law enforcement officers and other witnesses who verified Hess's account of the inspection. (Doc. 53 at 7). The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") informed Special Agent Deurmeier that Shideler's prior felony convictions prohibit him from owning firearms, ammunition, or explosives. (Doc. 53 at 2); 18 U.S.C. §§ 922(g)(1), 842(i)(1). Multiple sources provided Special Agent Deurmeier with accounts of gunfire coming from Plaintiff's property, sightings of Shideler with firearms, and Shideler being present with Plaintiff when she shopped for firearms, silencers, or ammunition. (Doc. 80 at 8).

Special Agent Deurmeier applied for a search warrant from Bozeman by telephone to search the storage unit on June 2, 2020. (Doc. 80 at 9–10). The search warrant application included a photo of the storage unit, a detailed description of the location, and the listed address of 240 Glacier Mountain Lane, Unit C, Bozeman, MT. (Doc. 83 at 2–3; Doc. 80 at 9). Judge DeSoto, who was in

Missoula, reviewed the application and concluded that the FBI had presented probable cause to search the storage unit. (Doc. 80 at 10). Judge DeSoto signed her copy of the warrant and directed Special Agent Deurmeier to sign his copy on her behalf. (Doc. 10 at 14). The search warrant allowed officers to search and seize any items related to firearms, ammunition, explosives or destructive devices, and documents evidencing ownership, occupancy, or use of the storage unit. (Doc. 80 at 11). Law enforcement executed the search warrant on June 3, 2020. (Doc. 83 at 3–4; Doc. 53 at 9). The search resulted in the seizure of various firearms and ammunition. (Doc. 83 at 3–4; Doc. 53 at 9).

## ANALYSIS

When considering a motion to dismiss, Federal Rule of Civil Procedure 12(b)(6) instructs the court accept as true "all well pleaded allegations of fact" within the complaint construed "in the light most favorable to the non-moving party." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020). Dismissal proves appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

F.3d 1049, 1055 (9th Cir. 2008) (quoting *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).

I. **Plaintiff's Barred Claims**

Plaintiff has posited a variety of claims: intentional infliction of emotional distress, (Doc. 70 at 12); failure to investigate Defendant Harris, (Doc. 70 at 4); *Bivens* claims concerning the activities of the Attorney General and FBI Director in their official capacities, (Doc. 70 at 5, 14–19); and a conspiracy to plant an "ANTIFA bomb" (Doc. 70 at 3).

The majority of Plaintiff's claims against the government officials remain barred as a matter of law. Plaintiff failed to show evidence that she exhausted administrative remedies with the FBI as required under the Federal Tort Claims Act to allege intentional infliction of emotional distress. *See* 28 U.S.C. § 2675(a). The Court therefore lacks jurisdiction to hear her tort claim. *See Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015). Additionally, the FBI's alleged failure to conduct a criminal investigation cannot represent a valid claim. No constitutional right exists to have the FBI conduct an investigation and courts have refused to recognize such a claim under *Bivens*. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (holding there is no claim under 42 U.S.C. § 1983 for failure to investigate). Sovereign immunity bars plaintiff's official-capacity claims against the Attorney General and FBI Director. *See DaVinci Aircraft, Inc. v. United States*,

926 F.3d 1117, 1127 (9th Cir. 2019) (holding the United States has not waived sovereign immunity for *Bivens* claims); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding federal officials may not be held liable under *Bivens* on a theory of respondeat superior). Further, Plaintiff's "ANTIFA bomb" conspiracy claims fail because she has not alleged any facts showing the existence of an express or implied agreement among the defendant officers to deprive her of her constitutional rights or an actual deprivation of those rights resulting from that agreement. *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).

Plaintiff's claims against the non-federal officials also prove barred as a matter of law. Harris, Hess, and Maguire are undisputedly non-government actors and private persons and therefore not subject to *Bivens* claims. *See generally Corr. Servs. Corp. v. Malesko*, 534 U.S. 61(2001). Plaintiff alleges that Harris, Hess, and Maguire worked in concert with the FBI as "co-conspirators" to coordinate a "fake/ false ANTIFA bomb and bomb materials threat" from May 22 to June 3, 2020. (Doc. 70 at 3,4).

As previously discussed, Plaintiff has failed to allege any facts that would demonstrate any expressed or implied agreement among defendants to implement a conspiracy or deprive Plaintiff of her rights. Plaintiff additionally makes accusations of extortion (Doc. 12 at 8), filing false complaints (Doc. 70 at 11), tampering (Doc. 70 at 12), drug trafficking (Doc. 70 at 9), and intentional infliction

of emotional distress (Doc. 70 at 12). Plaintiff provides no more than unsubstantiated conclusory statements to support these claims. Plaintiff has failed to demonstrate *any* facts that would constitute a valid claim against Harris, Hess, and Maguire. Plaintiff's complaint contains only conclusory allegations that fail to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Plaintiff's Unreasonable Search and Seizure Claim

A plaintiff may, in limited circumstances, sue federal employees under *Bivens* for the violation of constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)). Plaintiff alleges that the FBI Agents violated her Fourth Amendment right against unreasonable searches and seizures. A search and seizure executed pursuant to a properly issued search warrant constitutes a reasonable search and seizure. *See Mendez v. Cnty. of L.A.*, 897 F.3d 1067, 1075–76 (9th Cir. 2018).

Plaintiff argues that officers wrongfully seized her property based on an "illegal" search warrant. (Doc. 70 at 8). Plaintiff first claims that Special Agent Deurmeier forged Judge DeSoto's signature on the warrant. (Doc. 70 at 17). Plaintiff then argues the wrong address listed on the warrant for the storage unit invalidates the search warrant. (Doc. 70 at 15-16). The Court will address each argument in turn.

### a. The remote signing of the search warrant proves legitimate

Plaintiff first alleges that Special Agent Deurmeier forged Judge DeSoto's signature on the warrant. (Doc. 70 at 17). Plaintiff claims to have been "familiar" with the Judge DeSoto's signature so concluded that the signature on the search warrant had been "forged" by Special Agent Deurmeier. (Doc. 70 at 9).

The Federal Rules of Criminal Procedure allow a judge, who is not in the same location as the special agent, to instruct the special agent to sign that warrant on the judge's behalf. *See* Fed. R. Crim. P. 4.1(b)(6)(C) (allowing a magistrate judge to " transmit the warrant or summons by reliable electronic means to the applicant *or* direct the applicant to sign the judge's name and enter the date and time on the duplicate original"). Judge DeSoto instructed Special Agent Deurmeier to sign his copy of the search warrant as provided by that Federal Rule. Plaintiff's claims of forgery prove baseless.

### b. The address listed on the warrant does not invalidate the warrant

Plaintiff next alleges that the search warrant proved invalid because it contained the incorrect address for the storage unit. The warrant identified the storage unit's location at "240 Glacier Mountain Lane, Unit C, Bozeman, Montana." (Doc. 83 at 2–3). The lease agreement for the storage unit lists this address. (Doc. 80 at 8–9). Upon the request of a separate leaseholder, however, the storage units were recently assigned the new address of 200 Glacier Mountain

Lane, Bozeman, Montana. (Doc. 80 at 9). Hess, who also lives on the same property as the units, now uses both addresses to refer to the storage units. (Doc. 80 at 9). The "240" address used within the warrant correctly identified the storage unit's address according to the lease agreement and location of Hess' property where all the units are located.

Even in the event the listed address on the warrant was incorrect, the warrant was valid. Courts use a two-part test to determine whether a warrant description proves sufficient. First, the warrant must include a description of the area to be searched "with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985). Second, courts consider whether the description could result in a "reasonable probability that another premise might be mistakenly searched." *Id*. Warrant descriptions "need only be reasonably specific, rather than elaborately detailed." *United States v. Rude*, 88 F.3d 1538,1551 (9th Cir. 1996).

In *Turner* the Ninth Circuit addressed whether a warrant description was sufficiently particular despite the use of the incorrect street number. *See Turner*, 770 F.2d at 1510–11. The Ninth Circuit concluded that the written description within the *Turner* warrant was specific to the location, the officer who executed the warrant personally knew which premises was intended for the search, and there was "virtually no chance" that the executing officer would mistakenly search

9

another location. *Id*. at 1511. The Court in *Brobst* similarly determined that a warrant description can qualify as sufficiently particular even when the warrant fails to include the new address of that home, the fact that a similar home was nearby, and officers had not previously watched the location. *United States v. Brobst*, No. CR 06-55-M-DWM, 2007 WL 9728901, at *2 (D. Mont. Feb. 6, 2007).

Here, even assuming the address on the warrant was incorrect, the warrant's description proves sufficiently particular. The warrant included precise details about the location of the storage unit on the lot, the layout and appearance of the storage unit, as well as a color photo of the storage. (Doc. 80-1 at 9). Special Agent Deurmeier, who executed the warrant, personally had observed the storage unit before the search. (Doc. 80 at 8, 10). These features of the warrant application would "enable the executing officer to locate and identify the premises with reasonable effort." *Turner*, 770 F.2d at 1510. It proves unlikely that another location would have been mistaken for the storage unit described in the search warrant application. *See id.*

## CONCLUSION

No question exists as to the validity of the search warrant. This claim—as with Plaintiff's other claims—prove unsupported by any reasonably alleged facts or the law. Therefore, Defendants Motion to Dismiss (Doc. 78) is granted and

Plaintiff's complaint is dismissed in its entirety with prejudice. The Court will otherwise deny all other motions as moot.

## ORDER

Accordingly, **IT IS ORDERED** that Defendants' Motions to Dismiss (Doc. 78, 16, 14, 34, 36) are **GRANTED**. All other motions (Docs. 51, 59, 64, 65, 69, 73, 75) are **DENIED** as moot.

Dated the 1st day of July, 2021.

_____
Brian Morris, Chief District Judge
United States District Court